UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| REGENT COMMUNICATIONS, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:09-cv-61-RLY-WGH |
| | ) | 3:09-cv-62-RLY-WGH |
| ALAN R. BRILL, et al., | ) | |
| Defendants. | ) | |
| | ) | |

**ENTRY ON APPEAL OF BANKRUPTCY COURT ORDER**S

Alan Brill ("Brill") owned, directly and indirectly, various companies operating in the media industry. During the year 2000, he considered selling the radio stations owned by his companies. Regent Communications, Inc. ("Regent") was a potential purchaser and on June 16, 2000, it entered into a confidentiality agreement ("2000 Confidentiality Agreement") with Brill and a partnership made up of Brill's media companies. Pursuant to the 2000 Confidentiality Agreement, Regent was prohibited from disclosing any information it obtained regarding the radio stations or using information it gained in a manner detrimental to Brill and the partnership of his media companies. No sale was consummated, but the 2000 Confidentiality Agreement contained no expiration provision.

On January 17, 2002, certain creditors filed involuntary petitions in this district's bankruptcy court, under Chapter 7 of the Bankruptcy Code against three of Brill's

1

companies, Brill Media Company, LLC, Brill Media Management, Inc., and BMC Holdings, LLC.  In February 2002, the three involuntary debtors converted their cases to voluntary cases under Chapter 11 of the Bankruptcy Code and were joined by 71 additional related companies (collectively the "Debtors"), while numerous other companies owned by Brill (collectively "Non-Debtors") remained solvent and did not become part of the bankruptcy proceedings.

In April 2002, the bankruptcy court appointed a Bankruptcy Administrative Officer ("BAO") to act as the exclusive representative of the Debtors to market and sell the assets of the Debtors.  The BAO commenced a process by which interested purchasers were invited to commence due diligence in connection with a possible acquisition of the Debtors' radio station assets, newspaper assets or both.  Brill was consulted by the BAO during the course of marketing the Debtors assets, but, because of his own interest in both Debtor and Non-Debtor companies (which Non-Debtor companies were interested in bidding on Debtor assets), the BAO, in consultation with the Creditors' Committee, took responsibility for negotiating with interested purchasers.

The BAO conducted initial negotiations with several interested purchasers and on June 7, 2002, the Debtors filed their Motion for an Order Approving Bidding Procedures with the bankruptcy court.  An order was entered setting up an auction process as part of the bidding procedures for both the newspaper and radio segments in the event that (i) there were parties willing to pay a higher price for the newspaper assets than what had

been offered at that point by 21st Century Newspapers, Inc. ("21st Century"), or (ii) the Debtors were either unable to negotiate a stalking horse bid for the radio and newspaper assets or a third party wished to bid on them.

As the initial negotiations progressed, Brill and the Non-Debtors discussed with Regent the possibility of jointly purchasing the Debtors' assets. On July 11, 2002, a second confidentiality agreement was entered into between Regent, Brill and the Non-Debtors, by which the Non-Debtors agreed to disclose certain confidential and proprietary information in exchange for Regent's promise not to use such information in a manner detrimental to Brill or the Non-Debtors. However, Regent later informed Mr. Brill that it was no longer interested in putting together a joint offer for the Debtors' media assets.

The auction of the Debtors' assets occurred over several days beginning August 20, 2002. The Non-Debtors joined with another media company, Cumulus, to bid on the assets. Regent found another partner as well and successfully bid on the radio assets. At the conclusion of the auction, the BAO and Debtors accepted the high bid of Regent on the radio assets and the high bid of 21st Century on the newspaper assets. The bankruptcy court entered an order confirming the acceptance of those bids and authorizing the sale of the assets, accordingly. After the BAO completed his obligations with respect to the sale of the Debtors' assets, the bankruptcy court entered an order confirming the Debtors' Amended Joint Plan of Liquidation on July 16, 2003, over the objections of Brill and the Non-Debtors. The confirmation order enjoined any lawsuit

against the Debtors or any professionals employed by the Debtors during the course of the proceedings with respect to the liquidation.

During the bankruptcy proceedings, Brill and the Non-Debtors had agreed to resolve via settlement ("Settlement Agreement"), certain claims they had against the Debtors. The terms of the Settlement Agreement included Brill's and the Non-Debtors' promise never to bring suit against the Debtors or the professionals, who were employed by the Debtors, during the course of the bankruptcy proceedings. The Settlement Agreement was approved by the bankruptcy court by order dated June 25, 2004.

On August 25, 2008, Brill, on behalf of himself and the Non-Debtors, filed a *pro se* Complaint in Vanderburgh Superior Court, naming Regent and numerous other entities, including professionals who had been employed by the Debtors, as Defendants (hereinafter "Brill's Lawsuit"). The Debtors and those of its professionals named as defendants in Brill's Lawsuit filed a motion in Debtors' bankruptcy proceedings entitled "Motion For An Order Directing Alan Brill And His Non-Debtor Affiliates to Comply With The Orders Of This Court And Imposing Sanctions And Other Relief For Their Prior Failure To Do So" (hereinafter "Motion to Compel"). The motion claimed that by filing suit in state court, Brill and the Non-Debtors were in violation of the Settlement Agreement as well as that part of the bankruptcy court's confirmation order prohibiting all persons from commencing an action related to the bankruptcy or the plan, including claims against any professionals providing services to the Debtors. The motion also

asserted that the claims being brought in Brill's Lawsuit belonged to the Debtors, not to Brill and the Non-Debtors. Regent and its CEO, who were both named as Defendants in Brill's Lawsuit, filed a similar motion to compel two days later in which they indicated their joinder in the Debtors' Motion to Compel and asserted that any claims based on the confidentiality agreements which Regent entered into were the property of the Debtors.

A First Amended Complaint was filed on September 19, 2008, in Brill's Lawsuit, removing as Defendants all of the Debtors' professionals previously named. However, the First Amended Complaint continued to name Regent and other entities and individuals as Defendants. The remaining Defendants in Brill's Lawsuit removed the case to the bankruptcy court in this district, where it became an adversary proceeding related to the bankruptcy proceedings of the Debtors.

On November 7, 2008, the bankruptcy court held a hearing on the Motion to Compel and a pretrial conference in the adversary proceeding. Two relevant orders were entered following the hearing and pretrial conference. The first order was issued in the adversary proceeding on November 21, 2008, staying those proceedings until the bankruptcy court could determine the disposition of the Motion to Compel in the bankruptcy proceedings. On December 5, 2008, the bankruptcy court entered an order in the main bankruptcy proceedings which granted the Motion to Compel in part, finding that Brill and the Non-Debtors had violated that part of the confirmation order which enjoined actions against the Debtors or their professionals. The order barred the

continuation or refiling of any lawsuit against the Debtors and their professionals. However, the order delayed any ruling on the issue of sanctions and took under advisement for later consideration that part of the Motion to Compel which contended that the claims being made by Brill and the Non-Debtors actually belonged to the Debtors.

The bankruptcy court also gave Brill and the Non-Debtors fourteen days following the hearing to find legal counsel. Brill and the Non-Debtors complied, and on January 19, 2009, their counsel filed a Motion For Leave To File A Second Amended Complaint in the adversary proceeding. A Second Amended Complaint was attached to the motion as an exhibit and was also filed separately. The Second Amended Complaint reduced the number of claims asserted to four, all based on or related to the confidentiality agreements between Regent, Brill and the Non-Debtors, and it eliminated all Defendants other than Regent. On February 3, 2009, Regent filed a motion requesting that the bankruptcy court strike the Second Amended Complaint as well as the related motion to amend because of the stay that had been ordered earlier.

On February 11, 2009, the bankruptcy court held another hearing on the issues it had reserved and taken under advisement with respect to the Motion to Compel. At that hearing it also heard argument on the motions related to the filing of a Second Amended Complaint in the adversary proceeding. Two bankruptcy court orders followed that hearing and those orders are the subjects of this appeal.

6

On March 16, 2009, the bankruptcy court entered its "Order Regarding Reserved Issues" in the bankruptcy proceedings, finding that the claims raised by Brill and the Non-Debtors in their Second Amended Complaint in the adversary proceeding were not claims of the Debtors and not a part of the bankruptcy core proceedings, nor were they related to the bankruptcy.  The court went on to find that the claims in the Second Amended Complaint were not barred by *res judicata*, collateral estoppel or law of the case.  Further, the court found that the claims being raised by Brill and the Non-Debtors related to private agreements between parties, who were not parties to the bankruptcy proceedings, and would not affect the administration of the bankruptcy estate.  Therefore, the bankruptcy court found that the assertion of the claims in the Second Amended Complaint did not violate the confirmation order provisions which enjoined the pursuit of related litigation.

The bankruptcy court followed up its March 16 order in the bankruptcy proceedings with an order in the adversary proceedings entered on March 18, 2009.  In that order, the bankruptcy court remanded the Brill Lawsuit to state court, finding that it lacked jurisdiction to adjudicate the dispute between the parties.  In so doing, it referred to its explanation in the March 16, 2009, order in the bankruptcy proceedings.  Regent seeks district court review of these two bankruptcy court orders, filing separate appeals: one with regard to the bankruptcy proceedings and one with regard to the adversary proceeding.  This Entry on Appeal of Bankruptcy Court Order addresses both orders and

will be entered with respect to both appeals.[1]

## Standard of Review

When reviewing a bankruptcy court's decision pursuant to 28 U.S.C. §158(a), this court examines the factual findings of the bankruptcy court under a clearly erroneous standard, while conclusions of law and the legal significance accorded to facts are reviewed *de novo*. *Matter of Sheridan,* 57 F.3d 627, 633 (7th Cir. 1995). If the bankruptcy court's account of the factual evidence is plausible in view of the record, the district court may not deviate from that account unless it is left with a firm and definite conviction that a mistake has been committed. *Id.* By contrast, *de novo* review of a bankruptcy court's legal conclusions and the legal significance accorded to facts requires the district court to make an independent examination without deference to the bankruptcy court's conclusions. *Grochocinski v. Schlossberg,* 402 B.R. 825, 834 (N.D. Ill. 2009).

---

[1] On March 2, 2010, Regent filed its Suggestion of Bankruptcy, notifying this court that it had sought bankruptcy protection under Chapter 11 in the Untied States District Court for the District of Delaware. After a joint motion was filed by the parties to these appeals, the court entered an order on May 5, 2010, lifting any stay and allowing these matters to move forward.

**Discussion**

Jurisdiction

     Regent's first argument on appeal is that the bankruptcy court erred in deciding it had no jurisdiction and its first discourse on that issue centers around whether the Second Amended Complaint was a nullity. Indeed, when the Second Amended Complaint was filed in the adversary proceeding as a separate docket entry, Brill and the Non-Debtors had yet to receive leave to file it and the bankruptcy court had stayed the adversary proceedings until it could rule on the issues it took under advisement with regard to the Motion to Compel. However, the court scheduled a hearing on the Motion for Leave to File Second Amended Complaint and Regent's Motion to Strike to occur contemporaneous with its hearing in the main bankruptcy proceedings on the issues which it had taken under advisement. At the close of that February 11, 2009, hearing, the court stated that it was inclined to grant leave to file the Second Amended Complaint, but made no specific oral or written ruling to that end.

     Inherent in the two orders that followed from that hearing is the bankruptcy court's decision to allow the amendment sought by Brill and the Non-Debtors. In those orders, the bankruptcy court analyzed the claims as they were posed in the Second Amended Complaint and would not have done so if it had not decided to allow that amended version to be filed. The fact that the bankruptcy court did not go through the formality of

9

lifting the stay and specifically stating that it was granting the Motion for Leave to Amend may have been momentarily confusing, but could not have been prejudicial in any sense, considering that the parties had been aware that the hearing was scheduled to address the propriety of allowing the amendment and they were given the opportunity to argue their respective positions.  A technical procedural hiccup in the bankruptcy court's ruling, without any accompanying prejudice, is no basis for this court to find fault in its legal conclusions.

Regent also contends that the substantive decision was incorrect, because even if the Second Amended Complaint is allowed to stand, the bankruptcy court had "core" jurisdiction over the adversary proceeding because it required the bankruptcy court to interpret and enforce its prior orders.  According to Regent, the gravamen of the claims raised in the Second Amended Complaint is that Regent's purchase of the radio station assets at auction was improper, which would necessarily fly in the face of the bankruptcy court's orders approving the sale as having been conducted in good faith.

A bankruptcy court does retain jurisdiction to enforce its orders on asset sales.  *In re Eveleth Mines, L.L.C.,* 318 B.R. 682, 687 (8th Cir. 2004).  The problem with Regent's argument is that Brill and the Non-Debtors do not seek to overturn the sale, nor do they claim that the sale process as administered by the BAO was somehow flawed.  Brill and the Non-Debtors seek damages from Regent because, they claim, it acted contrary to its agreement and made fraudulent representations in connection with that agreement.  No

part of the remedy sought would interfere with the bankruptcy court's order approving the sale or affect in any manner how the bankruptcy estate is handled.

Core proceedings are those that would not exist without the federal bankruptcy laws. *Hoffmeyer v. Lowen Group Intern., Inc.,* 279 B.R. 471, 477 (D.Del. 2002). The Second Amended Complaint asserts state law claims that would accrue regardless of whether federal bankruptcy law existed and the bankruptcy court did not err in determining that it had no core proceedings jurisdiction. Regent has never really argued that the bankruptcy court had "related to" jurisdiction. However, the bankruptcy court correctly found that it would have no related to jurisdiction either, because, regardless of the outcome of Brill's Lawsuit, there would be no impact on the assets or administration of the bankruptcy estate.

Additional Bankruptcy Court Rulings

Though Regent believes that the bankruptcy court had jurisdiction to render a decision on the issues it reserved from the original hearing on its Motion to Compel, it contends that, once the bankruptcy court reached a decision that it had no jurisdiction, it should have stopped its analysis. It should not have contemporaneously decided that the claims raised by Brill and the Non-Debtors were not barred by res judicata, collateral estoppel or law of the case. As argued by Regent, the bankruptcy court could only make such a ruling if it had jurisdiction. This court agrees.

Once the bankruptcy court determined that the Second Amended Complaint was in play and that, based on the claims now alleged by Brill and the Non-Debtors, it had no jurisdiction, no further resolution of issues was necessary and no action other than the remand of Brill's Lawsuit could be taken. *In re Allegheny Health Educ. & Research Foundation,* 383 F.3d 169, 176 (3rd Cir. 2004). Once a court determines that it lacks jurisdiction, it lacks the ability to do anything more than announce the fact and rid itself of the cause. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). As well reasoned as the bankruptcy court's determination may have been with respect to why *res judicata,* collateral estoppel or law of the case are inapplicable, it was not a determination for it to make. It need only have remanded Brill's Lawsuit to the Vanderburgh Superior Court.

Conclusion

Based on the explication above, this court **AFFIRMS** the order of the bankruptcy court in EV 08-57096, which remanded the claims raised in the Second Amended Complaint in the adversary proceeding to the Vanderburgh Superior Court. This court **AFFIRMS IN PART** the order of the bankruptcy court appealed from bankruptcy proceeding EV 02-70079, insofar as the order correctly identifies a lack of jurisdiction over the claims raised in the Second Amended Complaint by Brill and the Non-Debtors,

but the court **VACATES** that part of the order which purports to decide other issues related to those claims.

**SO ORDERED** this   28th   day of July 2010.

                                              RICHARD L. YOUNG,  CHIEF JUDGE
                                              United States District Court
                                              Southern District of Indiana

Electronic Copies to:

Nathan Hugh Blaske
GRAYDON HEAD & RITCHEY LLP
nblaske@graydon.com

David C. Campbell
BINGHAM MCHALE LLP
dcampbell@binghammchale.com

James M. Carr
BAKER & DANIELS - Indianapolis
jim.carr@bakerd.com

John Michael Debbeler
GRAYDON HEAD & RITCHEY LLP
mdebbeler@graydon.com

Phillip J. Fowler
BINGHAM MCHALE LLP
pfowler@binghammchale.com

Jeffrey A. Hokanson
HOSTETLER & KOWALIK PC
jeff.hokanson@hostetler-kowalik.com

Beth R. Kramer
OFFICE OF UNITED STATES TRUSTEE
Beth.Kramer@usdoj.gov

Shannon D. Landreth
BINGHAM MCHALE LLP
slandreth@binghammchale.com

Terry Ross Noffsinger
NoffsingerLAW, p.c.
tn@nofflaw.com

Andrew C. Ozete
BAMBERGER FOREMAN OSWALD & HAHN
aozete@bamberger.com

Thomas C. Scherer
BINGHAM MCHALE LLP
tscherer@binghammchale.com


Copies to:


Amy P. Alley
SIDNEY AUSTIN LLP
555 W. Fifth Street
Suite 4000
Los Angeles, CA 90013

Joel G. Samuels
SIDLEY AUSTIN LLP
555 W. Fifth Street
Suite 4000
Los Angeles, CA 90013

Thomas P. Hanrahan
SIDLEY AUSTIN LLP
555 W. Fifth Street
Suite 4000
Los Angeles, CA 90013

Josh F. Brown
HOSTETLER & KOWALIK, P.C.
101 W. Ohio Street
Suite 2100
Indianapolis, IN 46204